# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JERRY CARTER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16-cv-00025-JAR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Jerry Carter's Motion to Vacate, Set Aside, or Correct Sentence, filed under 28 U.S.C. § 2255. (Doc. 1.) The government has responded in opposition. (Doc. 20.) For the following reasons, Movant's petition is **DENIED** and this action is **DISMISSED with prejudice**.

### I. Introduction and Background

Movant was charged in a three-count indictment with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*United States v. Carter*, No. 13-CR-334, Doc. 1.) The charges arose from the execution of a search warrant at Movant's residence by St. Louis Metropolitan Police Department Officers. (*See Carter*, Doc. 58.)

The search warrant was supported by an affidavit supplied by Detective Lawrence O'Toole, in which he swore that he had received information from an anonymous source that

1

Movant was selling drugs out of his apartment and that Movant had handguns inside. (*Id*. at 4.) O'Toole testified at deposition that the source had been working with, and was considered reliable by, the Drug Enforcement Agency ("DEA"). In addition, O'Toole averred that he and Detective Michael Kegel had been told by a confidential informant ("CI") who had been inside Movant's apartment that he[1] had seen Movant with drugs and a gun. (*Id*. at 5.) According to the affidavit, the CI identified Movant in a photograph and explained in detail how he had purchased drugs from Movant inside the apartment. (*Id*.) Likewise, the affidavit stated that the CI had been a reliable source in prior state and federal drug prosecutions. (*Id*.) In addition, O'Toole had conducted a computer search of Movant's criminal history and found convictions for first-degree murder and armed criminal action. (*Id*.) He noted Movant's criminal history in the affidavit and added that officers had surveilled Movant conducting what appeared to be hand-to-hand drug sales. (*Id*.)

During the execution of the warrant, officers found a handgun whose serial number had been obliterated, numerous items of drug paraphernalia, various cellophane bags containing heroin, crack cocaine, marijuana, or other drugs, and documents in Movant's name suggesting that he lived in the apartment. (*Id*. at 5-6.) The government added that, after Movant had been read his *Miranda* warnings, he told officers that his girlfriend and his dog were both inside. (*Id*.) Finally, while officers were searching the residence, they overheard Movant's girlfriend ask, "Is everything going to be ok?" and heard Movant respond, "No, baby, everything is not going to be ok. They just got me with a gun." (*Id*. at 6.)

---

[1] For ease, the Court uses masculine pronouns to describe the CI even though his or her identity

Prior to trial, Movant sought an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the warrant. (*Id*. at 10-20.) He argued that O'Toole's affidavit was insufficient to support the warrant because it "relied primarily on the hearsay of an unidentified informant." Absent a valid warrant, the physical evidence and incriminating statements were fruit of an illegal search. (*Id*. at 10-20.)

The Magistrate Judge and this Court denied Movant's request for a *Franks* hearing and his motion to suppress.[2] Of note, the Court found that the informant had provided reliable information in the past; his information regarding Movant was based on first-hand knowledge; he had shared the information with O'Toole in person, allowing the officer to assess his credibility; and his information was corroborated both by an independent DEA source and by the officers' own surveillance and investigation. (*Carter*, Doc. 58 at 11.) In addition, the Court found that, even if the affidavit contained false information, the warrant was still valid under the good faith exception because there was no evidence that the issuing judge had abandoned his role as a neutral and detached reviewer of the warrant or that O'Toole had been dishonest or reckless in his affidavit. (*Id*. at 12-13.) After making those findings, the Court held that a *Franks* hearing was not warranted because there was no basis to conclude that the affidavit contained "factual misrepresentations or omissions relevant to the probable cause determination." (*Id*. at 13.)

Leading up to trial, the government notified Movant and the Court of its intent to introduce "prior bad acts" evidence under Federal Rule of Criminal Procedure 404(b). (Doc. 20

---

is not known.

[2] As adopted from Magistrate Judge's Report and Recommendation. (*Carter*, Docs. 58, 61.)

at 13.) It sought to enter evidence of a number of heroin sales to DEA informant Kelly Chase and witnessed by Detective Anthony Mocca in the months leading up to Movant's arrest. (*Id*. at 14.) The government presented the sales as intrinsic evidence of Movant's intent to distribute. (*Id*.) Movant sought to exclude the uncharged crimes as overly prejudicial. (*Id*. at 15.) The Court denied Movant's objection and allowed the government to admit its 404(b) evidence. (*Carter*, Doc. 155 at 38.) The Court also denied Movant's motion to exclude references to any drugs other than heroin because he had not been charged with possession of any other drug. (*Id*. at 54.)

A jury found Movant guilty of all three counts. (*Carter*, Doc. 106.) The Court sentenced him to 130 months in prison to be followed by three years of supervised release. (*Carter*, Doc. 134.) On appeal, Movant argued, among other things, that the Court erred in failing to suppress the warrant, in admitting the 404(b) evidence, and in sustaining the government's objection to counsel's cross-examination of O'Toole. (*Carter*, Doc. 165.) The Eighth Circuit Court of Appeals affirmed Movant's conviction and sentence (*id.*), and he did not appeal further.

Thereafter, Movant filed this § 2255 motion, advancing dozens of grounds for relief. (Doc. 1.) His arguments can be grouped into claims of ineffective assistance of trial counsel, violation of the Due Process Clause of the Fifth Amendment, and trial court error. (*Id*.) The government argues that all of Movant's grounds should be denied on their merits or as previously raised and rejected by the Eighth Circuit. (Doc. 20.)

## II. Analysis

A § 2255 movant is entitled to relief when his sentence "was imposed in violation of the Constitution or laws of the United States." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th

Cir. 2011). The movant must show that the "claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

Movant's §2255 motion nominally advances seven grounds for relief, each with dozens of paragraphs in support, some of which assert individual instances of allegedly unconstitutional activity and others that merely add factual context. (*See* Docs. 1, 1-1, 1-2.) The Court has distilled Movant's fifty-nine-page motion into seven concrete grounds for habeas relief. (Docs. 1, 1-1, 1-2.)

**Ground 1 – Ineffective Assistance of Trial Counsel: Pretrial Issues**

Movant begins by alleging numerous instances of ineffective assistance of counsel. To prove ineffective assistance of counsel, a movant must show that his attorney's performance was objectively unreasonable, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, the movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The standard is "highly deferential." *Id*. at 689.

*a. Chain-of-Custody Issues*

Movant argues that trial counsel was ineffective for failing to win the suppression of evidence obtained during the execution of the warrant because there were obvious gaps in the chain of custody. (Doc. 1 at 4.) Movant argues that O'Toole cannot show the exact time he deposited into the locked drop box the drugs and firearm seized from the apartment and that there is no evidence of the exact time crime lab technicians retrieved the evidence the next morning. Movant argues that counsel should have attacked the potential eighteen-hour window of unaccounted-for time by highlighting the times listed in the chain-of-custody report, calling

5

lab technician Bridgette Stewart to testify, objecting to the admission of (and, conversely, failing to request the disclosure of) Stewart's lab report, or otherwise seeking to suppress the evidence based on chain-of-custody issues. (*Id*. at 4-9.)

The government responds by noting that Movant's argument that there was a time gap in the chain of custody is based on his review of Stewart's lab report, which was provided to him during discovery. (Doc. 20 at 38.) Because the report was available to Movant's counsel at trial, Movant's claim that counsel should have requested it fails. Likewise, his reliance on the contents of the report in support of his chain-of-custody argument is fatal to his claim that counsel should have objected to its admission. Moreover, the government notes that trial counsel *did* request all testing records and *did* use them to vigorously cross-examine the government's witnesses on the chain of custody. (*Id*. at 38-39.) Finally, the government adds that the alleged time gap, even if it could be proven, would have had little effect on Movant's conviction in light of the other significant evidence against him, including first-hand reports from two reliable informants and officers' surveillance of Movant engaging in hand-to-hand drug sales. (*Id*. at 39.)

The Court agrees. Trial counsel's vigorous cross-examination regarding the chain of custody constituted an objectively reasonable attempt to undermine the significance of the seized drugs. In addition, the Court finds that the failure to exclude the evidence on chain-of-custody grounds did not prejudice Movant. There was ample additional evidence of Movant's participation in drug-trafficking activity and possession of a firearm and thus Movant cannot show that the result of the proceeding would have been different. The Court therefore finds that counsel was not ineffective in his handling of the chain-of-custody issue.

### b. *Abandoning Motion to Suppress Statements*

Next, Movant argues that trial counsel "abandoned his motion to suppress" the statements he made while the warrant was being executed. (Doc. 1 at 8.) He quotes the Magistrate Judge's Report and Recommendation, which included a footnote that begins, "Based on the record before the court, it appears that [Movant] has abandoned his motion to suppress statements." (*Carter*, Doc. 58 at 8 n.5.) The motion to suppress related to Movant's statement to officers that he did not live at the residence named in the warrant and Movant's statement to his girlfriend during the execution of the warrant (and overheard by officers). (*Id*.)

Nevertheless, the Magistrate Judge went on to note that the motion lacked merit because the government represented to the court that it had no intent to introduce the first statement at trial and because the second statement was not made to law enforcement officers and therefore did not implicate the Fifth Amendment. (*Id*.) The government argues that Movant's habeas claim fails for the same reasons and that trial counsel's decision to abandon a losing argument was objectively reasonable. (Doc. 20 at 40-41.)

The Court agrees. The Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id*. at 478.

Both of Movant's suppression claims lacked merit. The government's assurance that it would not introduce Movant's first statement eliminated any risk of unconstitutional prejudice, and trial counsel's decision not to pursue suppression of that statement was objectively

7

reasonable. His second statement did not stem from a custodial interrogation or any compelling influences—it was a statement made voluntarily to his girlfriend. The failure to advance a meritless claim does not cause prejudice and therefore will not support an ineffective-assistance-of-counsel argument on counsel's failure to object to either statement. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012).

### c. *Statements Against Movant's Interests*

Movant next asserts that trial counsel said several things to the Court leading up to trial that prejudiced him. (Doc. 1 at 8-9.) The statements related to the government's 404(b) evidence of hand-to-hand drug sales Movant had made to informants in months before his arrest. Counsel asserted that the government could not introduce that evidence without lab testing that proves that the substances sold by Movant were in fact controlled substances. (*Id.*) Movant argues that counsel prejudiced him by admitting that the sales had taken place. (*Id.*)

The government responds that, contrary to Movant's characterization, counsel's statements were made in an effort to prevent the introduction of the 404(b) evidence. (Doc. 20 at 41-43.) Rather than admitting that the sales occurred, counsel was arguing that the government had no evidence that drugs were involved.

The Court had already ruled that the 404(b) evidence was admissible. Counsel was trying to undermine the value of that evidence by illustrating that it did not show what the government said it showed. The Court finds that this strategy was both reasonable and beneficial to Movant.

**Ground 2 – Ineffective Assistance of Counsel: Trial Strategy**

Movant highlights numerous decisions made by counsel at trial that he believes amounted to ineffective assistance: admitting in his opening statements that "personal use" amounts of drugs were found in Movant's residence; failing to object to the Court's limiting instruction; and "portraying [Movant] as a drug dealer." (Docs. 1 at 10-12, 1-1 at 16.) Movant asserts that these decisions undermined the legitimacy of counsel's advice to forgo a plea and stand trial.

### a. Opening Statements

During his opening statement, counsel said, "The evidence will be that they found some drugs in the apartment, the date that they executed the search warrant, but they were personal use amounts." (Doc. 1 at 10.) Movant asserts that counsel's concession that drugs were found in his residence relieved the government of its duty to prove an essential element of possession with intent to distribute heroin, in violation of Movant's Sixth Amendment right to a fair trial. (*Id.*)

The Court disagrees. It is clear from the record that counsel's trial strategy was to concede that drugs were found in the home but to argue that they did not belong to Movant. That strategy was objectively reasonable for a number of reasons. First, it would have been futile to argue that no drugs were found in the apartment in light of the government's seizure and testing of the drugs, especially after the Court ruled that they were admissible. However, that a small amount of drugs consistent with personal use were found in a residence shared by a known drug user undermines an essential element of the government's case: that Movant was running a distribution operation of some scale out of the apartment. In other words, counsel sought to recast the drugs found at Movant's residence as consistent with his live-in girlfriend's personal use and, crucially, *inconsistent* with the distribution and sale of which Movant was accused. This was reasonable trial strategy under the circumstances of this case.

### b. Limiting Instructions

Movant next argues that counsel allowed the government to lower its burden of proof by failing to object to the Court's limiting instruction regarding the admission of the 404(b) evidence. (Doc. 1 at 11-12.) The Court instructed the jurors that they "may consider this evidence only if [they] can find it is more likely true than not true." (*Id*.) Movant argues that the instruction is unconstitutional in light of the criminal standard of proof beyond a reasonable doubt. (*Id*.)

Movant misapprehends the substance and effect of the limiting instruction. It applied only to whether the jury would consider the 404(b) evidence; it did not apply to Movant's guilt. *United States v. Vieth*, 397 F.3d 615, 617-18 (8th Cir. 2005). "[E]vidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element," so long as it is "(1) relevant to a material issue; (2) *proved by a preponderance of the evidence*; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *Id*. (emphasis added) (citations omitted). Thus, the jurors were properly directed that they could consider the government's 404(b) evidence only if they concluded that it was more likely true than not. The government's burden of proving Movant's guilt beyond a reasonable doubt never changed. For that reason, trial counsel was not ineffective for not objecting to the instruction. *Lafller*, 566 U.S. at 167.

### c. *Portraying Movant as a Drug Dealer*

Under a section purporting to challenge counsel's handling of the affidavit underlying the search warrant, Movant asserts, "Trial counsel's portraying defendant as a drug dealer resulted in prejudice." (Doc. 1-1 at 16.) It is unclear to the Court which statement Movant is referencing.

To the extent he refers to counsel's opening statement, that argument fails for the reasons stated above. Without more, the Court concludes that Movant has failed to demonstrate entitlement to habeas relief on this ground.

### d. *Decision to Stand Trial*

Movant suggests that counsel's strategic decisions undermine the legitimacy of his decision to stand trial. (Doc. 1 at 11.) "[I]n order to satisfy the 'prejudice' requirement" in the context of a plea agreement, "the defendant must show that there is a reasonable probability that, but for counsel's errors," he would have pleaded differently. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

As an initial matter, Movant does not assert that he would have pleaded guilty if counsel had told him of his strategic plans before trial; he only asserts that it resulted "in the suggestion of a decision on an improper basis abandoning [Movant's] plea of not guilty and decision made to stand trial." (Doc. 1 at 11.) Moreover, the Court has already found that counsel's strategic decisions were objectively reasonable and therefore concludes that Movant's argument is premised on the idea that he would have pleaded guilty instead of going to trial with an objectively reasonable defense strategy. There is nothing in the record to support Movant's argument and therefore this point is denied.

### Ground 3 – Ineffective Assistance of Counsel: Witnesses

Next, Movant argues that counsel's failure to call Detective Michael Kegel to testify amounted to ineffective assistance inasmuch as it robbed Movant of his Sixth Amendment right to confrontation. (Doc. 1-1 at 2.) He argues that O'Toole's affidavit included information that actually came second-hand from Kegel, that the information was therefore inadmissible hearsay on which the issuing magistrate unknowingly relied, and that, had counsel cross-examined

Kegel, he could have demonstrated the numerous inconsistencies between the warrant and O'Toole's deposition testimony. (*Id*. at 2-8.) In addition, Movant argues that counsel should have objected when Anthony Mocca testified to a legal conclusion and introduced hearsay at trial. (Docs. 1-1 at 27, 102 at 1.)

"Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001) (quoting *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990)). Even when "some of the potential witnesses' testimony could have been helpful in rebutting or clarifying some collateral evidence," a movant is not entitled to habeas relief unless the decision not to call those witnesses is "outside the wide bounds of strategic choices that counsel is afforded." *Id*.

The government responds by pointing to the trial transcript. When Movant's counsel indicated that he did not intend to call any witnesses, the Court asked Movant whether he objected. (*Carter*, Doc. 156 at 232.) Movant said no. (*Id*.) The Court continued:

> THE COURT: Again, is there anyone else that you need to talk to, anything you need to do further in terms of making that decision, or you firmly believe that's the best decision for you to make?
>
> [MOVANT]: I believe that's the best decision for me to make.
>
> THE COURT: Again, you have given that thought, and that's your decision; is that correct?
>
> [MOVANT]: Yes.
>
> THE COURT: Okay.

(*Id*.) After explaining that counsel's decision is based on his strategic judgment, but that the decision was ultimately left to Movant, the Court asked if Movant had anything else to add. (*Id.* at 232-33.) The dialogue continued:

12

> [MOVANT]: No, I have discussed it with my attorney. And I mean, you know I wanted to call the other officer that we took the deposition of, but he said he don't think that's a good idea for me to call another officer as a witness, because so I understand that.
>
> THE COURT: At this point, you agree with that decision; is that correct?
>
> [MOVANT]: Well, I'm not saying that I agree with the decision, but I'm.
>
> THE COURT: Do you understand the reasons that he is saying that; is that correct?
>
> [MOVANT]: Yes.
>
> THE COURT: Do you understand that he believes that that is --
>
> [MOVANT]: He is doing it for my best interest. I believe that's why he is making that decision.
>
> THE COURT: Okay. Are there any other witnesses that you would ask to be called to testify.
>
> [MOVANT]: No, your Honor.
>
> THE COURT: Okay. Again, you have had a full opportunity to discuss this with your attorney, give that consideration, and again, you believe that that's in your best interest; is that correct?
>
> [MOVANT]: Yes.

(*Id.*) The Court concludes that counsel's decision was within the wide bounds of strategic choices that counsel is afforded and finds Movant's current argument unavailing in light of his repeated affirmations at trial.

Movant also argues that counsel should have objected when Mocca gave a legal conclusion during his testimony and when he introduced hearsay evidence. (Doc. 1-1 at 23.) Specifically, Movant notes Mocca's testimony that he did not see the entirety of the controlled buy by Ashley Chase that formed the basis for the 404(b) evidence and instead relied on Chase's word that the deal had taken place. (Doc. 1-1 at 27.)

The government does not directly respond to this argument. (*See* Doc. 20.) Nevertheless, the Court concludes that Movant is not entitled to habeas relief on this ground.

13

First, Movant's counsel objected to the entirety of Mocca's testimony, arguing that the 404(b) evidence was inappropriate in any form. (*Carter*, Doc. 155 at 77-78.) Second, counsel *did* object on hearsay grounds when the government asked Mocca to describe what Chase had told him. (*Id*. at 93-94.) The government withdrew the question and moved on. (*Id*. at 94.) Third, counsel conducted a thorough and probing cross-examination that challenged the credibility of Chase's participation in, and Mocca's testimony about, the controlled buy. (*Id*. at 101-27.) In sum, counsel was not ineffective in his handling of Mocca's testimony.

### Ground 4 – Ineffective Assistance of Counsel: Search Warrant

In his fourth ground, Movant argues that counsel should have done more to attack the validity of the search warrant because, among other things, it included second-hand, incomplete, and inaccurate information such that the Magistrate's approval was not valid. The Court concludes that Movant is not entitled to relief on this ground because his counsel vigorously challenged the warrant in a pretrial motion to suppress and in his objections to the Magistrate Judge's denial of that motion. (*Carter*, Docs. 32, 54, 58, 59.) The record reflects that counsel's committed representation was objectively reasonable.

### Ground 5 – Due Process[3]

Next, Movant argues that his substantive due process rights under the Fifth Amendment were violated. (Doc. 1-1 at 25 to 27, Doc. 1-2 at 1 to 6.) He specifically argues that the government failed to meet all of the elements for admitting 404(b) evidence, that it had

---

[3] Movant titles this section of his motion as "Double Jeopardy" but makes no such argument. (Doc. 1-1 at 25 to 27, Doc. 1-2 at 1 to 6.)

previously told the Court that it did not intend to enter that evidence, that the government lied about giving the DEA's lab report to Movant—which purportedly went to the legitimacy of the 404(b) evidence, that he was convicted of possessing a firearm during a drug trafficking offense when he was not charged with drug trafficking, and that the "booking sheet" did not mention distribution, only possession. (*Id.*)

The government notes that the Eighth Circuit considered and affirmed the trial court's decision to admit the 404(b) evidence. *United States v. Carter*, No. 14-3816, slip op. at 2 (8th Cir. 2015). "[A]bsent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal." *Withrow v. Williams*, 507 U.S. 680, 721 (1993). No such considerations are present here.

The Court concludes that Movant is not entitled to relief on his other due-process grounds, either. Movant was convicted of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1.) Any crime punishable under 21 U.S.C. § 841 is considered a "drug trafficking crime." 18 U.S.C. § 824 (c)(2). Finally, Movant provides no legal basis on which to conclude that the booking sheet's failure to include a reference to distribution entitles him to habeas relief.

**Ground 6 – Ineffective Assistance of Counsel: Appeal**

In his sixth ground for relief, Movant argues that counsel's ineffective assistance handicapped his appeal. (Doc. 1-2 at 7 to 18.) Specifically, Movant argues that counsel failed to preserve or advance appellate claims regarding the inadmissibility of evidence and statements, chain of custody issues, and the 404(b) evidence. (*Id.*) Upon review of the Eight Circuit's opinion affirming Movant's conviction, it is clear that counsel did advance the issues Movant

identifies in his sixth ground.  *Carter*, No. 14-3816, slip op.  Movant therefore cannot show that counsel was ineffective in his approach to appellate issues.

## Ground 7 – Trial Court Error

In his final habeas ground, Movant argues that the Court violated his constitutional right to a fair trial by sustaining the government's hearsay objection when trial counsel attempted to cross-examine O'Toole about his deposition testimony and by intimidating counsel into acquiescing to the government's request to forego a break during trial.  (Doc. 1-2 at 9 to 12.)

The Eighth Circuit considered and rejected Movant's first claim, finding that "there was nothing prejudicial about the ruling sustaining the government's objection to any attempt to impeach a trial witness with prior deposition testimony by the witness that was consistent with the trial testimony."  *Carter*, No. 14-3816, slip op. at 2-3.  Having been raised and rejected on direct appeal, the Court will deny this ground.  *Withrow*, 507 U.S. at 721.

Movant's second claim apparently refers to a sidebar discussion in which the Court asked whether the attorneys wanted to take a break before Movant's counsel finished the cross-examination of O'Toole.  A review of the transcript shows that the Court asked whether Movant's counsel was close to finishing.  (Doc. 156 at 92-93.)  Counsel responded that he had "awhile" to go and suggested that they break at a later time.  (*Id*.)  Government's counsel said, "No."  (*Id*.)  Movant's counsel then told the Court he would try to "wrap it up."  (*Id*.)  He did so, and a break was taken.  (*Id*. at 97.)

There is no basis to conclude from this exchange that Movant's counsel was intimidated or otherwise pressured into changing his trial strategy.  He completed his cross-examination of O'Toole without complaint.  There is no evidence to support Movant's assertion that the decision

16

not to take a break prejudiced him.

### III. Conclusion

For the foregoing reasons, the Court concludes that Movant's counsel represented him strategically and professionally and that Movant was not prejudiced by any decision counsel made. The Court further concludes that Movant's other habeas claims fail on their merits.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Jerry Carter's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1), is **DENIED.**

**FURTHER** the Court finds that, because Movant cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998). A judgment dismissing this case is filed herewith.

Dated this 10th Day of December, 2018.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE